## THE FRANK C. KUGLER. DEMPSEY v. ATLANTIC REFINING CO. MOTOR BARGE 31.

(District Court, E. D. Pennsylvania. November 25, 1924.)

No. 189.

Collision ⊙══95(4)—Motor barge held solely in fault for collision with a meeting tow.

A collision in the Delaware & Chesapeake Canal between a barge in tow and a meeting motor boat *held* due solely to the fault of the motor boat in keeping to the middle of the channel and keeping up excessive speed until too near the tug, then sheering to starboard into shoal water, and again sharply to port, striking the tow, though it was sufficiently close to the other side of the channel to leave ample room for safe passage.

In Admiralty. Suit for collision by John J. Dempsey, managing owner of the barge Frank C. Kugler, against the Atlantic Refining Company motor barge 31, with the tug Columbia impleaded. Decree for libelant against the motor barge. On final hearing on pleading and proofs. Libel dismissed as against the tug Columbia.

Lewis, Adler & Laws and Otto Wolff, all of Philadelphia, Pa., for libelant.

Howard M. Long, of Philadelphia, Pa., for Atlantic Refining Co.

H. Alan Dawson, of Philadelphia, Pa., for motor barge No. 31.

THOMPSON, District Judge. This suit arose out of a collision between the barge Frank C. Kugler and the Atlantic Refining Company motor barge 31 on the afternoon of July 14, 1922, in the Delaware & Chesapeake Canal, about a mile west of Delaware City, while the Kugler was in tow of the tug Columbia, proceeding eastward. The Atlantic Refining Company, owner of motor barge 31, upon petition, brought in the tug Columbia under rule 56.

The Kugler is a wooden barge 175 feet in length, of 23 feet 10 inches beam and 12 feet depth of hold. At the time of the collision, she was loaded partly in her hold and partly on deck with a cargo of 450,000 feet of pine lumber, shipped from Windsor, N. C., for Philadelphia. The tug Columbia is 89 feet over all in length, of 18 feet beam and 9 feet depth of hold, and is owned by the Eastern Transportation Company. Motor barge 31 is a steel barge about 134 feet in length, of 12 feet 6 inches beam and 12 feet 2 inches depth of hold. She was loaded with 120,000 gallons of oil and bound for Richmond, Va.

The Columbia had passed through the locks at St. George's, having in tow the barges Kugler, Mary McNally, and Kent in the order named, all loaded. The Kugler was towed about 20 feet astern of the Columbia upon two hawsers, the McNally about 12 to 14 feet astern of the Kugler upon three hawsers, and the Kent the same distance astern of the McNally upon three hawsers.

The part of the canal where the collision occurred is 11 feet in depth for a width of 100 feet. At the northern or towpath side the bank is at an angle of about 45 degrees, and on the berm bank or southern side it rises from the depth of 11 feet, leaving some shoal water between the masonry of the bank and the berm bank shore. Motor barge 31 was proceeding westward in the canal, and upon observing the approaching tug and tow gave the customary signal of one blast, which was acknowledged by one blast from the Columbia, for the passage to starboard of the approaching vessels. When the signals were exchanged, the Columbia and barge 31 were about a mile apart. When their bows were about 100 yards

apart, barge 31, which was then proceeding at a speed of about 4 miles an hour, stopped her engines, sheered to starboard, and about the time her bow was abreast of the bow of the Columbia came into shoal water within a few feet of the north bank of the canal, took another sheer to port, passed the Columbia, and struck the Kugler on the bluff of her port bow, causing considerable damage, glanced off the Kugler, and passed the McNally and Kent. The Kugler started to fill, and was beached to prevent her sinking or capsizing.

There is no real dispute about the fact that barge 31 sheered toward the towpath and sheered out again directly at the Kugler's bow. That fact is sufficiently established by all of the witnesses who saw the collision. It is contended on the part of barge 31 that the Columbia, with its tow, upon passing a bend in the canal about a quarter of a mile westward of the place of collision, was over to within 40 feet of the north bank at the time of the collision, leaving insufficient space at the normal depth of 11 feet to allow the passage of the motor barge. The inside of the bend in question in the canal is to the north, and the natural and ordinary method for the tug to bring her tow around the bend and prevent the tugs in tow from being carried toward the berm bank, where the water was shoal, would be to keep well in at the bend toward the port or north side of the canal until the barges in tow had been straightened out upon their course.

As corroborative of this theory, there is testimony on the part of barge 31 that, when the exchange of signals occurred, the two rear barges of the tow had not appeared around the bend. This is, however, flatly contradicted by the testimony of witnesses who were upon the Columbia, the Kugler, the McNally, and the Kent. The witnesses from the tug and barges in tow testified to a clearance of from 65 to 85 feet between the berm bank and the port sides of the tug and tow. That testimony, taking into consideration the interest of the Kugler and that of the McNally and Kent, belonging to and operated by the Eastern Transportation Company, the same owner as of the Columbia, is so substantially corroborated by witnesses who were upon the government dredge, Bob Morris, which was lying about 300 yards westward of the place where the collision occurred, as to be convincing. The testimony of the master of the Morris is to the effect that the Columbia and her tow were well over to the south side of the channel, as far as, in safety, they could go without going aground.

There is no attempt upon the part of the master of barge 31 to contradict the fact that she took a sharp sheer to the towpath, and, in an endeavor to get clear of the bottom, sheered abruptly out past the Columbia, and thereby the collision was caused. It is insisted, however, that, when she was abreast of the Columbia's bow, the suction from the Columbia drew her upon that course and carried her to the bank. The Columbia had been proceeding at about 2 miles an hour, but had slowed down. Barge 31 was proceeding at about 4 miles an hour and stopped her engine just before she sheered and came abreast of the Columbia's bow. For the Columbia to exert this suction practically in advance of her bow would be under the circumstances an unnatural phenomenon. Barge 31 was heavily loaded, her keel must have been close to bottom, for the evidence shows that she was loaded to a depth to barely, if at all, comply with the rules governing the canal, and it is impossible to conceive of suction being exerted in that manner when the bows of the two vessels were abreast.

It is significant, in passing upon the navigation of barge 31, that the master in charge, although he had been for some time engaged upon craft navigating the canal, had never been engaged as master of the power tug, or, so far as the evidence goes, as master of any other propelled vessel upon the canal, until upon the trip when the collision occurred. When the bows of barge 31 and the Columbia were about abreast, the engine was reversed. It is evident, therefore, that the master of barge 31, being inexperienced in handling his boat, delayed reducing her speed, and, in changing her course to go to starboard of the approaching tug in tow until he was obliged, in attempting to avoid a collision with the Columbia, to take the sharp sheer, brought his boat so close to the berm bank that she "smelled bottom," thereby rendering it necessary to bring her out from a situation in which she was liable to go aground, and that in bringing her out she took a sufficiently sharp sheer to port to bring her bow into collision with the Kugler, causing the collision and damage.

That there was ample space for her to clear the Kugler is definitely shown by the angle at which the latter received the blow. The Kugler's port hawser was cut, and the evidence convinces me that the stem of barge 31 struck the bluff of the bow of the

Kugler. After the collision, she passed the Kugler and the other barges with ample space between, but went aground again after clearing them.

From all the evidence, I find that the Columbia, the Kugler, and the other barges in tow were keeping sufficiently to the southward side of the canal to enable barge 31 to pass in safety, if she had been properly navigated; that there was fault upon the part of barge 31 in keeping to the middle of the channel, and keeping up excessive speed until she was too close to the Columbia to pass port to port without risk of collision; that, in the exercise of due care, her speed should have been moderated, which was not done until too late; that in the emergency her master lost his head, and, in endeavoring to clear the Columbia by sheering to starboard, sheered so sharply to port as to cause the collision. I find no fault on the part of the Kugler nor of the Columbia. The Columbia had her tow well in control and on the proper side of the channel. The Kugler was following the tug under proper control, and the fault was solely that of barge 31.

A decree for damages may be entered in favor of the libelant against barge 31, with reference to a commissioner to ascertain the damage caused to the Kugler and her cargo, and to report thereon. The libel will be dismissed as against the tug Columbia. Counsel may prepare and present a form of decree.